**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 18 2001**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

LARRY GARDUNO,

　　　　Plaintiff-Appellant,

v.

ROBERT FURLONG; ENDRE
SAMU; DENNIS HOUGNON; LOUIS
NORDINE; B. BAUER, Capt.; SCOTT
HALL; DAVID TEIGEN, in their
individual and official capacities,

　　　　Defendants-Appellees.

No. 00-1388
(D.C. No. 95-D-1129)
(D. Colo.)

ORDER AND JUDGMENT　*

Before **HENRY, BRISCOE,** and **MURPHY** , Circuit Judges.

　　　　After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\*　　This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant Larry Garduno brought this civil rights complaint under 42 U.S.C. § 1983 seeking, *inter alia*, compensatory damages, punitive damages, and an injunction directing defendants to expunge a disciplinary conviction for attempted murder from his files. Mr. Garduno only appeals from the district court's order adopting the recommendation of the magistrate judge that defendants' motion for summary judgment be granted on Mr. Garduno's due process claims. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I.

Mr. Garduno's conviction stemmed from a violent incident at the Limon Correctional Facility, Colorado, on January 28, 1993, during which several guards were stabbed. Following a disciplinary hearing on the charges, Mr. Garduno was convicted of attempted murder and sentenced to thirty-days punitive segregation and the loss of forty-five days good time credit.

In his civil rights complaint, Mr. Garduno alleged that the disciplinary proceeding denied him due process and equal protection of the law. He claimed that the charges, brought more than eleven months after the incident, were fabricated and based on information provided by confidential informants who did not exist. He alleged the notice of charges was inadequate to allow him to prepare a defense, the purported witnesses did not testify, and the hearing board

-2-

did not establish the credibility and reliability of the confidential informants. As a result of his conviction, Mr. Garduno alleged that he was reclassified to a more secure facility, placed in segregation, and deprived of good time credits in violation of his constitutional rights. Mr. Garduno also asserted an equal protection claim, alleging that defendants' actions were a conspiracy to deprive him of his constitutional rights because of his national origin as an Hispanic.

Defendants filed a motion for summary judgment based on Mr. Garduno's failure to allege deprivation of a liberty interest, Eleventh Amendment immunity, qualified immunity, and vague and conclusory allegations of conspiracy. Defendants also asserted that Mr. Garduno's claim based on a loss of good time credits was moot as his good time credits had been restored. [1] The district court referred Mr. Garduno's complaint to a magistrate judge pursuant to 28 U.S.C. § 636.

The district court adopted the recommendation of the magistrate judge that defendants' motion for summary judgment on Mr. Garduno's equal protection claims be denied, and appointed counsel. Following a three-day bench trial to the magistrate judge, sitting as a special master, the court found in favor of

---

[1] Mr. Garduno did not refute defendants' assertion that his good time credits had been restored. Therefore, we agree that the claim is moot.

-3-

defendants on Mr. Garduno's equal protection claims. Mr. Garduno does not appeal this decision. [2]

The magistrate judge relied on *Sandin v. Conner*, 515 U.S. 472 (1995), in recommending that defendants' summary judgment motion be granted on Mr. Garduno's due process claims. The court concluded that Mr. Garduno's claims failed to implicate a liberty interest entitled to procedural due process protection. It is from this holding that Mr. Garduno appeals.

## II.

We review the district court's decisions on motions for summary judgment de novo. *Trujillo v. Univ. of Colo. Health Scis. Ctr*., 157 F.3d 1211, 1213 (10th Cir. 1998). Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Mr. Garduno alleges that his transfer from the Limon Correctional Facility to the Colorado State Penitentiary, a more restrictive facility, and his placement in

---

[2] Although Mr. Garduno continues to argue that, due to ethnic discrimination, defendants conspired to remove him to a more secure prison, remove him from the general prison population, and place him in segregation on false charges, he has not alleged any specific facts indicating that defendants acted with a discriminatory motive or that they conspired to deny him his constitutional rights. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (noting that perfunctory complaints which fail to frame and develop an issue are insufficient to invoke appellate review).

administrative segregation constituted the kind of "atypical and significant hardship" recognized by the *Sandin* Court as implicating a liberty interest. 515 U.S. at 484. In *Sandin*, the Court determined that, although a state may create liberty interests that are protected by the Due Process Clause, such interests

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* at 484.

The *Sandin* Court noted a prior holding that "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Id.* at 478 (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976)). As we have previously stated, "[t]he due process rights of prisoners are subject to reasonable limitation or restriction in light of the legitimate security concerns of the institution, . . . and 'the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.'" *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)); *see also Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (holding that Colorado prison regulations do not create a liberty interest in an inmate's prison placement classification).

Mr. Garduno's allegations regarding the conditions of his confinement are very vague. He claims that his transfer subjected him to "23 hour lockdown and severe restrictions, including an inability to visit the law library." Appellant's Br. at 6. He does not, however, provide us with any description of the "severe restrictions" or any specific indication of their duration. Although Mr. Garduno appears to argue that his reclassification and relocation were as a result of his conviction on the attempted murder charge, in its order disposing of Mr. Garduno's equal protection claims, the magistrate judge stated that when the charges against Mr. Garduno were initially brought, he had already been transferred from the Limon facility to the Freemont Correctional Facility, then to the Centennial Correctional Facility, and finally to the Colorado State Penitentiary where he was housed in December 1993. The disciplinary hearing on the attempted murder charge was not held until January 12, 1994. Mr. Garduno never specifically refuted this finding.

Contrary to Mr. Garduno's argument, his allegations fall squarely within the *Sandin* decision . *Sandin* concerned a prisoner's claim that there were procedural irregularities in his disciplinary hearing which resulted in a finding of misconduct and a thirty-day punitive segregated confinement. The Court examined the conditions of the prisoner's confinement and determined that the prisoner's conditions essentially "mirrored those conditions imposed upon

inmates in administrative segregation and protective custody," so the prisoner's "confinement did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction." 515 U.S. at 486. The Court concluded that the conditions of confinement alleged by the prisoner due to an allegedly faulty disciplinary proceeding were "within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." *Id.* at 487. Consequently, there was no protected liberty interest implicated and no constitutional due process safeguards were triggered. *Id.*

Despite Mr. Garduno's conclusory assertions to the contrary, he has not provided any evidence that would distinguish either the discretionary aspect of his relocation or the duration and conditions of his segregation from *Sandin*. Therefore, we conclude that Mr. Garduno has no legally protected liberty interest in either the location of his confinement, *see Sandin*, 515 U.S. at 486; *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983), or the conditions or duration of his segregation, *see Sandin*, 515 U.S. at 486-87.

In a vague and conclusory manner, Mr. Garduno alleges that, due to racial animus, defendants conspired to charge him with false disciplinary charges, relocate him to a more secure prison, and remove him from the general prison population. In his order finding for defendants on Mr. Garduno's equal protection claims, the magistrate judge, sitting as a special master, thoroughly

discussed Mr. Garduno's allegations of conspiracy and irregularities in the disciplinary process, ultimately finding that Mr. Garduno had presented no evidence that the hearing panel acted with discriminatory animus or deliberately ignored the Code of Prison Discipline rules. *See* Appellant's App. at 123-125. Mr. Garduno has not alleged any specific facts which would establish that defendants acted with a discriminatory motive or conspired to deprive him of his constitutional rights. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (holding that vague, conclusory, or general allegations of conspiracy to deprive a party of constitutional rights cannot withstand a motion seeking dismissal). Moreover, Mr. Garduno failed to provide this court with the record necessary to review this argument. *See Scott v. Hern*, 216 F.3d 897, 912 (10th Cir. 2000) (holding that where appellant did not provide sufficient record to permit review, appellate court must affirm). Therefore, we will not address Mr. Garduno's claims of irregularities in the discipline proceeding.

The judgment of the United States District Court for the District of Colorado is AFFIRMED.

Entered for the Court

Michael R. Murphy
Circuit Judge